[Civ. No. 391. Fourth Appellate District.—April 26, 1932.]

THOMAS R. CATTON, Appellant, v. CLAUDE KERNS et al., Respondents.

RAYMOND R. SHAW, Appellant, v. CLAUDE KERNS et al., Respondents.

Gallaher & Jertberg, Hartley F. Peart and Russel Shearer for Appellants.

Wakefield & Hansen for Respondents.

BARNARD, P. J.—These two actions, both brought to recover damages for personal injuries, were tried together and, by stipulation, have been consolidated on this appeal.

About 2 o'clock on the morning of January 1, 1930, the two plaintiffs and their wives left the Sunnyside Country Club and drove westerly along the highway toward Fresno, the car being driven by the plaintiff Shaw. After proceeding about a mile and a half from the country club they decided to return to the club. The car was stopped and the two plaintiffs got out and walked into a field on the north side of the highway, while Mrs. Shaw took the wheel and turned the automobile around so that it faced in an easterly direction. She stopped the automobile on the south side of the highway, opposite the place where the plaintiffs had left the road. There is some evidence that when the automobile was stopped its left front wheel was past the middle of the highway, and that the automobile then faced slightly in a northeasterly direction. About three minutes after Mrs. Shaw turned the automobile around the plaintiffs returned to the highway, but before starting across the same to enter the car they stopped at a point north of the highway, where one of the men was telling the other a story. According to the plaintiffs' witnesses, the point at which they stopped was three or four feet north of the traveled portion of the highway, while according to the defendants' version this point was about eighteen inches or two feet north of this traveled portion. While the plaintiffs were thus standing, neither one of them facing the east, the defendant Kerns approached in an automobile driving west. Kerns testified that he thought the plaintiffs' car was moving toward the north side of the road and that he pulled over to his right, and while so proceeding his car struck the plaintiffs, causing the injuries complained of. It appears that the traveled portion of the highway was sixteen feet in width. These actions, which followed, were tried with a jury, both resulting in verdicts for the defendants, and from the judgments which followed this appeal is taken.

The main point relied upon for reversal is that the court erred in instructing the jury as follows:

"You are instructed that in the year 1929 the California state legislature added section 150½ to the California Vehicle Act. You are instructed that section 150½ of the California Vehicle Act was in full force and effect at the time of the accident in question. The section of the Vehicle Act hereinbefore referred to is in words as follows: 'It shall be unlawful for any pedestrian to walk along and upon any highway outside of a business or residence district otherwise than close to his left-hand edge of the highway.' "

We think this contention must be sustained and that the giving of this instruction was not proper, in view of the pleadings and the evidence. The only negligence on the part of the appellants which is alleged in the answers filed by the respondents is that each respective plaintiff "stood and maintained himself on said Butler avenue in a careless, reckless and negligent manner". The evidence shows, without contradiction, that for more than three minutes before the time they were struck the appellants had not been upon the traveled portion of this highway; that they alighted from their car on the north side of the highway and proceeded into a field; that upon their return they stopped and were standing somewhere from a foot and a half to four feet north of the traveled portion of the highway; and that they had not started and were not about to start toward the traveled portion of the highway at the time they were struck. The only reasonable inference from the entire evidence is that they intended, as soon as they were ready to proceed, to cross over to the south side of the highway in order to enter their car, which was standing there. There is no evidence whatever which would actually or by inference tend to show that either of them was walking, or intended to walk, along the highway for any distance whatever. Under such circumstances, we think it was error to give this instruction to the jury. Respondents argue that the intention of the legislature in adopting this statute was to make it unlawful for a pedestrian to *use* a public highway in such a manner that he would not be facing the approaching traffic. We are unable to agree with this contention. It is hardly to be supposed that the legislature intended by this statute to prevent a pedestrian from crossing a highway or that it intended to compel him to cross, if at all, without looking where he was going, which would

inevitably result if he be required to at all times face the other way. The requirement that a pedestrian proceed "close to his left-hand edge of the highway" is not very well applicable to a person crossing the road. We think the intention of the legislature plainly appears from the language used and that the statute applies to a pedestrian walking along a highway and not to one crossing the same. Without doubt this statute was adopted for the purpose of changing the previous custom of walking along the right-hand side of a road, and not in any degree for the purpose of regulating the conduct of a pedestrian who desires to go from one side of the road to the other. His duties and obligations are governed and controlled by other laws.

With considerable care the respondents established by the testimony of various witnesses that the appellants were not looking toward or facing the car driven and owned by the respondents at the time or just before they were struck. In view of this evidence it is readily seen that this instruction may have had a most important effect upon the jury in rendering their verdict. The jury may well have thought that the appellants could not recover, irrespective of other considerations, because they had not met the obligation apparently imposed upon them by this instruction, the effect of which may well have been considered by the jury to be that it was the duty of the appellants, while upon the north side of this highway, to face the traffic approaching on that side, which in this case meant the car driven and owned by the respondents. The question of whether or not the driver of respondents' car was negligent is a close one and it is impossible to tell what the jury would have decided in this respect had this instruction not been given. There was evidence that the windshield on respondents' automobile was frosted to such an extent as to impair the vision of another occupant thereof; that this car was traveling at thirty-five miles per hour at the time of this collision; and that the driver of said car had from ten to twelve feet of clearance between the two appellants and their car, which was standing still. While the respondent Kerns testified that he thought the other car was moving as he approached, the preponderance of the evidence is to the effect that that car had been standing still for more than three minutes. The appellants had a right to have this question of fact

determined by the jury under proper instruction as to the law, and we think it is a miscarriage of justice to have such a question of fact thus confused by an improper instruction, misleading in an important respect under the existing circumstances, and resulting in a situation where it cannot be told whether the jury actually decided the real question of fact involved, or whether they held that, irrespective of any question of such negligence on the part of the respondents, the appellants could not recover because of a supposed violation of a statute, in that they did not, while standing upon the left-hand side of the highway, face the traffic approaching on that side. As was said in *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 Pac. 599, 603]: "Under this condition it cannot be said that there is no miscarriage of justice when it cannot be ascertained from the record upon what theory the jury was authorized by the instructions of the court to render its verdict, or upon what state of facts shown in evidence the verdict was reached."

Objection is also made by appellants to two other instructions given, which objections are, in our opinion, without merit and which need not be here discussed.

For the reasons given the two judgments appealed from are reversed and the actions remanded for a new trial.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 11, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 24, 1932.