[Civ. No 11462. Third Dist. Nov. 12, 1968.]

MELVIN FRY, Plaintiff and Appellant, v. JOHN ELDON YOUNG, a Minor, etc., et al., Defendants and Appellants.

---

342

Changaris, Trezza & Ithurburn, Changaris, Trezza, Ithurburn & Keeley, Fred B. Ithurburn, Malcolm A. Misuraca and Terence J. Keeley for Plaintiff and Appellant.

Price, Burness & Price, R. E. Burness, Rich, Fuidge, Dawson, Marsh & Morris, Chester Morris and John L. Feeney for Defendants and Appellants.

REGAN, J.—In an unpublished opinion, this court affirmed the order of the trial court granting all defendants a new trial. Shortly thereafter, the code provisions (Code Civ. Proc.,

§§ 657, 660) governing the timeliness and contents of new trial orders were reviewed by the State Supreme Court in a trilogy of cases—*Siegal* v. *Superior Court,* 68 Cal.2d 97 [65 Cal.Rptr. 311, 436 P.2d 311]; *Mercer* v. *Perez,* 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315], and *Treber* v. *Superior Court,* 68 Cal.2d 128 [65 Cal.Rptr. 330, 436 P.2d 330]. By direction of the Supreme Court, the appeal is here again for reconsideration in light of those three cases.

Plaintiff sued for personal injuries suffered when an automobile owned by defendant Hurt and driven by defendant Young rear-ended a pickup truck which defendant Olds was alleged to have negligently parked on a rural road. At the time of the accident, plaintiff was standing in the highway conversing with Olds, who was seated on the driver's side of the pickup.

The chronology of the litigation is significant:

On October 13, 1965, judgment was entered for plaintiff on a jury verdict against all defendants. The clerk's written notice of entry of the judgment was served by October 15, 1965. Relying individually or jointly on all statutory grounds (Code Civ. Proc., § 657), all defendants made timely motions for a new trial; Young and Hurt also moved for judgment notwithstanding the verdict. At a hearing on November 1, 1965, according to the clerk's minutes, the trial judge denied the latter motion but granted a new trial "on all issues for the reason that the Court erroneously instructed the jury." There was no recital in those minutes of the instructions which the court deemed erroneous. On December 2, 1965, plaintiff filed notice of appeal from that new trial order.

On December 7, 1965—after plaintiff had taken his appeal, but *within 60 days after service of notice of entry of judgment* (Code Civ. Proc., § 660)—the trial court made a written order directing the clerk to enter *nunc pro tunc* as of November 1, 1965, an order granting a new trial "upon the ground of insufficiency of the evidence to justify the verdict, in addition to . . . the ground of error in law." The *nunc pro tunc* aspect of this additional ground for relief was predicated upon clerical error having occurred at the November 1 hearing in that, at that prior hearing, "the court did, in open court, state its views that there was sufficient ground to justify granting the motion for new trial on the basis of insufficiency of the evidence as well as errors in law" but that the clerk had "omitted from the minute order . . . the specification that said motion was, among other grounds, granted upon the

ground of insufficiency of the evidence to justify the verdict.''

After directing the *nunc pro tunc* inclusion of insufficiency of the evidence as an omitted ground, the December 7 order next gave detailed reasons why the trial court deemed the evidence to be insufficient. The same order also specified the particular instructions which the court thought to have been erroneous.

Plaintiff did not file a new notice of appeal after the court's December 7 order. It was unnecessary that he do so to have both orders reviewed. (See *Halpern* v. *Superior Court,* 190 Cal. 384, 388 [212 P. 916].) After December 7, all defendants cross-appealed from the judgment, and defendants Young and Hurt cross-appealed from the order denying their motion for judgment notwithstanding the verdict.

The efficacy of the trial court's orders of November 1 and December 7 is governed by sections 657 and 660 of the Code of Civil Procedure. Section 657 authorizes the trial court to grant a new trial upon grounds which include insufficiency of the evidence to justify the verdict (ground 6) and error in law (ground 7). By amendment in 1965 (Stats. 1965, ch. 1749) it is provided that when a new trial is granted ''the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated.'' It is also provided: ''If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk.'' Under section 660, with an exception not here material, the power of the court to pass on a motion for a new trial expires 60 days after service on the moving party of notice of entry of judgment.

In *Siegal* v. *Superior Court, supra,* 68 Cal.2d 97, a *nunc pro tunc* order purporting to grant a new trial *after the 60-day period prescribed by section 660 had expired* was held void and in excess of the trial court's jurisdiction even though that belated order recited an inadvertent failure to enter of record any portion of a new trial order which had been actually made within the 60 days. In *Mercer* v. *Perez, supra,* 68 Cal.2d 104, after emphasizing the difference between the statement of ''grounds'' and the specification of ''reasons'' required by section 657, the Supreme Court held that alleged insufficiency of the evidence could not be reviewed on appeal, and that affirmance of an order which could be construed as granting a new trial on that ground alone was

barred, where the trial court had filed no written reasons whatever to show why it deemed the evidence inadequate.

In addition to the other amendments to section 657 in 1965 it was provided: ''On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons; provided, that the order shall not be affirmed upon the ground of the insufficiency of the evidence to justify the verdict . . . unless such ground is stated in the order granting the motion. . . .'' The amendment also provides that, where the order was based on insufficiency of the evidence, on appeal ''it shall be conclusively presumed that said order as to such ground was made only for the reasons specified . . . .'' In *Treber* v. *Superior Court, supra,* 68 Cal.2d 128, section 657 was said to require affirmance on any meritorious ground listed in the motion for a new trial (other than alleged insufficiency of the evidence or excessive or inadequate damages), even though an order granting it solely for ''errors in law'' had not been followed by any written specification of those errors.

Under the 1965 amendment, both *Mercer* (68 Cal.2d at p. 121) and *Treber* (68 Cal.2d at pp. 134-135) bar *nunc pro tunc* specifications of *reasons* made more than 10 days after the motion is granted. In the instant case, to rectify a clerical oversight, insufficiency of the evidence was added as a *ground* by a *nunc pro tunc* order which was itself made *within the 60-day period during which section 660 empowers the trial court to pass on a motion for a new trial.* None of the *Siegal-Mercer-Treber* trilogy of cases involved that circumstance. *Siegal* is the only one of the three that involves a *nunc pro tunc* correction, and there the corrective order was made *after* the court's 60-day power had ended.

The *Siegal* (68 Cal.2d at pp. 102-103) and *Mercer* (68 Cal.2d at p. 121) opinions cite many precedents for the concept that, under the 1939 amendment of section 657,[1] even where the trial court's purpose was to correct clerical error it lost jurisdiction to make a *nunc pro tunc* specification of

---

[1]The 1939 legislation (Stats. 1939, ch. 713, p. 2234) amended the last paragraph of section 657 to provide: ''When a new trial is granted, on all or part of the issues, upon the ground of the insufficiency of the evidence to sustain the verdict or decision the order shall so specify this in writing and shall be filed with the clerk within ten days after the motion is granted; otherwise, on appeal from such order it will be conclusively presumed that the order was not based upon that ground. . . .''

insufficiency of the evidence as a *ground* unless it did so in writing within 10 days after the motion for new trial was granted. None of those cited precedents, however, involved *nunc pro tunc* corrections made *within the 60-day period*.[2] All of those precedents were decided before section 657 was amended in 1965. And *Siegal, Mercer,* and *Treber* themselves give no discussion to the fact that, in the 1965 amendment, the Legislature deleted the previous requirement that the order specifying insufficiency of the evidence as a ground ''be filed . . . within ten days after the motion is granted'' and substituted the present statutory requirement that the order stating ''the ground or grounds'' (of whatever nature) ''must be made and entered *as provided in Section 660.*'' (Italics ours.) Thus, under the 1965 amendment, the 10-day limitation is no longer stated as being applicable to the recital of *grounds* but instead is stated only as a limitation on the specification or *reasons*, which must be filed within 10 days after the filing of the order containing the grounds.

Decisions under the 1939 amendment had consistently taken the position that its express 10-day limitation abrogated the power the trial court *would otherwise have* to use a *nunc pro tunc* order to specify insufficiency of the evidence where there had been a clerical failure to list that ground. (See, e.g., *Malkasian* v. *Irwin,* 61 Cal.2d 738, 744-745 [40 Cal.Rptr. 78, 294 P.2d 822]; *Roth* v. *Marston,* 110 Cal.App.2d 249 [242 P.2d 375], and cases cited.) Inasmuch as the 1965 amendment deleted that 10-day limitation, it is possible to view the 1965 change as reinstating the trial court's pre-1939 authority to make *nunc pro tunc* specifications of the ground of insufficiency of the evidence (e.g., *Lauchere* v. *Lambert,* 210 Cal. 274 [291 P. 412]; *Kraft* v. *Lampton,* 13 Cal.App.2d 596 [57 P.2d 171]; *Livesay* v. *Deibert,* 3 Cal.App.2d 140 [39 P.2d 466]). However, other considerations compel a rejection of such course. Its adoption would frustrate the 1965 Legislature's intent to require that full judicial deliberation on motions for new trial be practically concurrent with judicial disposition of such motions. (See *Mercer* v. *Perez, supra,* 68 Cal.2d at p. 113.) It would compel an unsuccessful opponent of the granting of the motion to safeguard his time to appeal (Code Civ.

[2]Nor has our own research found any case discussing whether, under the 1939 amendment of section 657, insufficiency of the evidence could be specified as a ground by a *nunc pro tunc* order made (1) *after* the 10 days allowed by *that* section had expired but (2) *before* the end of the 60 days during which section 660 gave the court power to determine the motion.

Proc., § 963; Cal. Rules of Court, rules 2(a) and 2(b)(2)) by filing a notice of appeal before he knew for certain the full basis of the trial court's action. (Cf. *Mercer* v. *Perez, supra,* 68 Cal.2d at pp. 113-115.) And it would further confuse the proceedings by converting the 10-day limitation on the specification of reasons (*Mercer* v. *Perez* and *Treber* v. *Superior Court, supra*) into one which was subject to repeated renewal during the 60-day period—if not beyond it—every time the trial court chose to make yet another *nunc pro tunc* correction of *grounds.*

 We therefore hold that, despite the fact that the 1965 Legislature removed from section 657 the 10-day limitation on the statement of grounds, the overall amendment should be deemed to prohibit *nunc pro tunc* additions either of reasons or grounds—even for clerical error—more than 10 days after the motion is "determined" in the manner prescribed by section 660. This conclusion is fortified by dictum in the *Mercer* case (stated without discussion of the 1965 deletion) to the effect that "a purported specification of *grounds* or reasons made after the 10-day statute of limitations had run is an act in excess of jurisdiction, and therefore void to that extent." (*Mercer* v. *Perez, supra,* 68 Cal.2d at p. 121; italics transposed.)

Thus, in the instant case, the December 7 order did not give either a timely statement of insufficiency of the evidence as a ground or a timely specification of the reasons why that ground applied. Nor did it contain a timely recital of the instructions which the trial judge thought erroneous. The court's power in those three regards—whether by original or *nunc pro tunc* order—had expired November 12, 1965. (Code Civ. Proc., §§ 12a, 657, 660.)

Since the November 1 order was in terms based on only one ground—error in law—and not on insufficiency of the evidence, and since all specifications of reason were tardy, appellate review of the sufficiency of the evidence is barred and the trial court's order cannot be sustained on that evidentiary ground. The only errors in law asserted by defendants in their motions and on this appeal pertain to instructions they claim (and the trial judge in part, but belatedly, specified) to be erroneous. Consequently, our further review will be confined to those instructions.

*"Roadway"* and
*"Pedestrian" Instructions*

Substantial evidence showed that plaintiff, who had left his

own vehicle parked on the southbound side of Zumwalt Road while he was inspecting an alfalfa field on foot, walked out of the field and stood in the southbound lane talking with Olds. At that time, Olds was sitting in the driver's seat of his pickup, which was parked squarely in the northbound lane close to the center line. After five minutes Olds pulled over to his right and reparked facing northerly at an angle with the road. Olds' left rear tire was then on a paved 3-foot-wide shoulder. The evidence conflicted as to whether, in this position, the left rear end of the pickup partially projected into the 10½-foot-wide northbound lane or was completely clear of it. Olds remained in the pickup. Plaintiff followed him over on foot and stood on the driver's side of the pickup while they continued the conversation for another 10 minutes before the accident. During the entire interval, plaintiff was standing either out in the northbound lane or on the adjacent shoulder. Upon seeing Young approaching from the south, plaintiff only had time to shout a warning to Olds and to run a few steps toward the front of the pickup before being struck.

The court instructed the jury that "no pedestrian shall walk upon any *roadway* outside of a business or residence district otherwise than close to his left-hand edge of the *roadway*" (Veh. Code, § 21956) and that "upon any highway in unincorporated areas no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the *roadway* when it is practicable to stop, park, or leave the vehicle off such portion of the highway" (Veh. Code, § 22504, subd. (a)). (Italics ours.) These instructions made the proper definition of "roadway" crucial in gauging the rights and duties not only of Olds but of plaintiff as well.[3]

Vehicle Code section 530 provides that "a 'roadway' is that portion of a highway improved, designed, or ordinarily used for vehicular travel." The trial court, on its own motion, deleted the "improved" and "designed" language and instructed the jury only that "a roadway is that part of a highway which is ordinarily used for vehicular traffic." More specifically, the court also instructed the jury that "that portion of Zumwalt Road referred to in the testimony of this case as the 'improved shoulder' is not a part of the roadway

---

[3]The evidence conflicted as to whether Young was using the shoulder or was completely within the northbound lane. An instruction was neither given nor requested concerning Young's duty to drive "upon the right half of the roadway . . . ." (Veh. Code, § 21650.) That omission is not urged as error on this appeal.

within the definition of the term 'roadway' as used in these instructions." These deletions, removing the shoulder from the jury's consideration as part of the roadway, were specified in the trial court's December 7 order as having been errors in law.

The trial judge correctly determined that he had erred in thus defining "roadway." The court's deletion of the "improved" and "designed" language was error because there was some evidence that the Zumwalt Road shoulder was "improved" or "designed" for the purpose of facilitating vehicular travel. That evidence, though slight, was to the effect that the 10½-foot lane and the 3-foot shoulder were both paved to grade even though the lane had a sealer coat on it and the shoulder did not. Similarly, there was evidence that the shoulder was "ordinarily used for vehicular travel" (Veh. Code, § 530); this consisted of plaintiff's testimony that he had seen cars (but "not too many of them") "all over the road all the way up to the edge where the pavement stopped." The issue of whether the shoulder was part of the "roadway" was one of fact and should have been left to the jury. (See *Wilson* v. *Foley*, 149 Cal.App.2d 726, 733-734 [309 P.2d 97].)

Apart from the court's erroneous definition of "roadway." Olds contends there was no evidence plaintiff was a "pedestrian" and that the court therefore erred in giving the above-quoted instruction on the duty of a pedestrian on a roadway (Veh. Code, § 21956). The uncontradicted evidence refutes Olds' claim. No emergency had compelled plaintiff to get out of his own vehicle. (Compare *Dennis* v. *Gonzales*, 91 Cal.App.2d 203, 205-206 [205 P.2d 55].) In contrast to the facts shown in *Boynton* v. *McKales*, 139 Cal.App. 2d 777 [294 P.2d 733], where the driver parked his car merely so he could stand beside it to install curtains, plaintiff in the instant case manifested a clear intention *to relinquish his driver's status and to set out on foot*. After inspecting his alfalfa field, plaintiff did not enter upon the roadway for the purpose of crossing all the way over it to the other side. (Compare *Catton* v. *Kerns*, 123 Cal.App. 94 [10 P.2d 1036].) He walked onto it so he could stand in the southbound lane talking with Olds; and, by the time the accident occurred, plaintiff had simply moved over to continue standing either in the northbound lane or on its adjacent shoulder. (Cf. *Newton* v. *Thomas*, 137 Cal.App.2d 748, 755-758 [291 P.2d 503].)

Plaintiff was clearly a pedestrian, and the prohibition of

Vehicle Code section 21956 against his *walking* upon the roadway except close to his left-hand edge necessarily barred his *standing* there as well. To hold otherwise would be to permit standing pedestrians to create safety hazards in the same places where walking persons cannot lawfully do so. (Accord, *Jermane* v. *Forfar*, 108 Cal.App.2d 849, 852 [240 P.2d 351, 30 A.L.R.2d 860]; *Nordman* v. *Mechem*, 227 Mich. 86 [198 N.W. 586]; *White* v. *Edwards*, 222 Mich. 321 [192 N.W. 560]; see *Inai* v. *Ede*, 59 Cal.App.2d 549, 554 [139 P.2d 76].)

In support of a contrary conclusion, Olds relies upon *Armstrong* v. *Sengo*, 17 Cal.App.2d 300 [61 P.2d 1188], where a motorist ran down a squad of national guardsmen while they were standing at attention upon a paved roadway. That case is readily distinguishable. Unlike plaintiff, the solders in the *Armstrong* case were upon the roadway in compliance with their duty to obey the commands of their superior officer except when such orders were palpably illegal. (See *Curnutt* v. *Holk*, 230 Cal.App.2d 580 [41 Cal.Rptr. 174].) Beyond that, in holding that their officer's command for them to stand on the pavement was lawful, *Armstrong* reflected the court's conclusion that the statutory predecessor of section 21956 was not intended to apply to troop units. (17 Cal.App. 2d at pp. 305-308.) A similar result was reached in *Zumwalt* v. *E. H. Tryon, Inc.*, 126 Cal.App. 583 [14 P.2d 912], where the earlier code section was held inapplicable to a sheepherder whose duties required him to work in the roadway.

### *"Last Clear Chance" Instruction*

The trial court gave the standard instruction on last clear chance (BAJI No 205 Revised). All defendants urge this as error. It was not specified as such by the trial judge.

In *Gillingham* v. *Greyhound Corp.*, 263 Cal.App.2d 564 [69 Cal.Rptr. 728], this court has recently reviewed the rules governing application of the last clear chance doctrine. It may be invoked "only when: (1) The plaintiff by his own negligence has put himself in a helpless position. . . . (2) The defendant *knew* that plaintiff was in a position of helpless peril; (3) The defendant thereafter had a last clear chance to avoid the accident—not a mere possible chance." (*Id.*, at p. 569.) In regard to the second element, "it must be remembered that . . . 'actual knowledge of plaintiff's position of danger is required, but constructive knowledge of his inability to escape will suffice.'" (*Id.* at p. 571.) A jury is not required to accept a defendant's denial that he actually knew plaintiff was in a position of danger;

from proper circumstantial evidence, the jury may find that defendant had such actual knowledge, and from this actual knowledge the jury may further infer that defendant should have known that plaintiff could not escape. (*Id.* at p. 570; see *Espinoza* v. *Rossini,* 247 Cal.App.2d 40, 52-55 [55 Cal. Rptr. 205]; *Gulley* v. *Warren,* 174 Cal.App.2d 470, 476-478 [345 P.2d 17].)

An instruction on last clear chance should be given where there is any substantial evidence which, viewed most favorably to its application, would reasonably support the doctrine. (*Gillingham* v. *Greyhound Corp., supra,* 263 Cal. App.2d at pp. 566-567; *Espinoza* v. *Rossini, supra,* 247 Cal. App.2d at p. 52.) However, unless such evidence supports each one of the above elements, an instruction on the doctrine is improper. (*Hickambottom* v. *Cooper Transp. Co.,* 163 Cal. App.2d 489, 491-492 [329 P.2d 609]; see *Duenas* v. *Domingo,* 219 Cal.App.2d 645 [33 Cal.Rptr. 320]; *Di Sandro* v. *Griffith,* 188 Cal.App.2d 428, 431-432 [10 Cal.Rptr. 595].)

On appeal, plaintiff makes no attempt to argue that the instruction was proper as to Olds. Nor could he, based on the undisputed evidence, make such a showing. Even assuming that Olds could be charged with constructive knowledge of plaintiff's inability to escape, there was no evidence from which the jury could have determined that, as to Olds, the third element of the doctrine was satisfied. The uncontradicted testimony of plaintiff and Olds showed that Olds' first warning of the impending rear end collision was when plaintiff yelled that a car was going to hit them. Olds, who never saw the approaching car, only had time to turn his wheel to the right and slump in his seat. Even if that testimony were disregarded, there was no contrary evidence to indicate that Olds had any chance whatever to avoid the accident. Therefore, as to Olds, the trial court erred in giving an instruction on last clear chance. "Since the instruction may have influenced the jury in arriving at a verdict for plaintiff and since the jury might well have found plaintiff guilty of contributory negligence contributing proximately to his own injury, the error is prejudicial." (*Kowalski* v. *Shell Chemical Corp.,* 177 Cal.App.2d 528, 537 [2 Cal.Rptr. 319].)

The last clear chance instruction, however, was proper as to Young and Hurt. There was evidence from which the jury could infer that Young actually saw plaintiff in his position of peril and should have realized plaintiff could not escape, and that Young had time to avoid the collision. Zumwalt

Road was a straight, level road at the accident site. The weather was clear. Sunset was at 7:32 p.m. Olds testified that the accident occurred at approximately 7:30 p.m. when there was "good visibility." Various witnesses estimated the visibility to have been between ¼ and ¾ of a mile. Young's speed was placed at 60 to 80 miles per hour. As he approached, no other traffic intervened between him and Olds' pickup. Plaintiff and Olds testified there was room on the road to the left of the pickup for Young to have passed or swerved by them. This same evidence, though in part contradicted, also supported the trial court's denial of the motion made by Young and Hurt for judgment notwithstanding the verdict. (See *Spillman* v. *City & County of San Francisco*, 252 Cal.App.2d 782, 786 [60 Cal.Rptr. 809]; *Robinson* v. *North American Life & Cas. Co.*, 215 Cal.App.2d 111, 118 [30 Cal.Rptr. 57].)

The order granting defendants a new trial is affirmed. Their cross-appeals from the judgment are dismissed as moot. The order denying defendants Young and Hurt judgment notwithstanding the verdict is affirmed.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied December 10, 1968, and the petition of the plaintiff and appellant for a hearing by the Supreme Court was denied January 8, 1969.