[Civ. No. 6328. Fourth Dist. Jan. 24, 1961.]

ANTOINETTE DI SANDRO et al., Appellants, v. JAY EDWARD GRIFFITH et al., Respondents.

Beloud & Hayton and Charles S. Althouse for Appellants.

Jarrett & Morgan and Albert J. Holzhauer for Respondents.

COUGHLIN, J.—The question presented by this appeal is whether the evidence in a personal injury action, involving an intersection automobile accident, required the giving of an instruction on the last clear chance doctrine. Appellants, the plaintiffs in the action, proposed such an instruction which the trial court refused to give, and this refusal is assigned as prejudicial error in their appeal from the judgment entered upon the verdict in favor of the respondents, the defendants in the action.

Granted the existence of substantial evidence, conflicting or otherwise, in support of each of the elements essential to an application of the doctrine of last clear chance a refusal to give a requested instruction thereon is error. (*Doran* v. *City & County of San Francisco*, 44 Cal.2d 477, 487 [283 P.2d 1]; *Daniels* v. *City & County of San Francisco*, 40 Cal. 2d 614, 623 [255 P.2d 785]; *Zanon* v. *Moher*, 136 Cal.App.2d

348, 350 [288 P.2d 597].) On the other hand, if there is not substantial evidence to support any one of those elements, the refusal to give an instruction thereon is proper. (*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 486; *Kowalski* v. *Shell Chemical Corp.,* 177 Cal.App.2d 528, 537 [2 Cal.Rptr. 319]; *Hickambottom* v. *Cooper Transp. Co.,* 163 Cal.App.2d 489, 491 [329 P.2d 609]; *Clarida* v. *Aguirre,* 156 Cal.App.2d 112, 115 [319 P.2d 20].) ■ The existence or nonexistence of such evidence is a question of law. (*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 487.) ■ In determining the issue thus presented, the evidence is viewed most favorably to the contention that the doctrine is applicable. (*Warren* v. *Ubungen,* 177 Cal.App.2d 605, 608 [2 Cal.Rptr. 411]; *Bonebrake* v. *McCormick,* 35 Cal.2d 16, 19 [215 P.2d 728]; *Guyton* v. *City of Los Angeles,* 174 Cal.App. 2d 354, 361 [344 P.2d 354]; *Durkee* v. *Atchison, T. & S. F. Ry. Co.,* 159 Cal.App.2d 615, 620 [324 P.2d 91].)

The record on appeal in this case is presented through a settled statement. The accident in question occurred in daylight, in the intersection of Mission Boulevard and San Antonio Avenue in San Bernardino County. Mission Boulevard is an east-west, four-lane divided through highway. San Antonio Avenue is a north-south, two-lane highway, posted with stop signs as it intersects Mission Boulevard. Immediately before the accident, the defendant, Jay Edward Griffith, was driving his automobile in an easterly direction along Mission Boulevard and the plaintiff, Antoinette Di Sandro, was driving an automobile in a southerly direction along San Antonio Avenue. The east and west bound lanes of Mission Boulevard were separated by a curbed center island; the eastbound lanes consisted of a marked left turn lane, 13 feet in width, adjacent to and south of the center island; the inside eastbound lane, 11½ feet in width, which was south of and adjoining the left turn lane, and the outside or curb lane which, including the paved portion of the shoulder, was 22½ feet in width, and was south of and adjoining the inside lane. The total width of all the lanes south of the center island was 47 feet. The westbound lanes were of approximately similar dimensions. To the west of the intersection oleander bushes in the center island and a curve in the highway limited the range of vision available to a person within the intersection or to one approaching from the west; the range of vision to and from the intersection extended approximately 800 feet to and from the west.

The two automobiles collided at a point which the investigating officer testified was 19 feet north of the south curb of Mission Boulevard and 6 feet east of the west curb of San Antonio Avenue; the collision involved the center and left front of defendant's car and the right rear of the plaintiff's car commencing at the rear door.

The plaintiff testified that she brought her automobile to a stop at the limit line on the north side of Mission Boulevard; looked to the east; saw no approaching cars; proceeded across the north half thereof; brought her car to a stop in the middle of the intersection; looked to her right, which was to the west; did not see any cars approaching; proceeded across the eastbound lanes of Mission Boulevard; "when she was approximately one car length within the south half of the intersection, . . . she saw the Respondent's automobile for the first time at a distance of approximately 408 ft. away"; and continued across until the collision occurred.

The defendant testified that when he first saw the plaintiff's automobile he was approximately 150 to 160 feet west of the intersection and was traveling at an approximate speed of 40 to 50 miles per hour in the lane of traffic nearest the center divider; that the plaintiff's automobile then was moving southerly across the intersection and was approximately 10 feet south of the stop limit line located at the northern entrance thereto, which would place her somewhere in the outside or northerly westbound lane; that she appeared to be accelerating her speed; that immediately he applied his brakes but did not sound his horn as he did not have time to do so; and that he watched the plaintiff after first seeing her until the impact occurred and that during this time she was looking straight ahead and never slowed down, stopped or looked in his direction.

A passenger in defendant's automobile testified that when he first saw plaintiff, her automobile was in the middle of the westbound lanes of Mission Boulevard; that he looked down to see if the defendant was going to apply his brakes; that he saw the defendant's foot go down; and that he then looked up and saw the plaintiff's car a split second before the collision.

The investigating officer testified that the defendant's car left skid marks 75 feet in length, which began in the inside lane and turned gradually to the south, terminating at the point of impact.

"The doctrine of last clear chance may be invoked if, and only if, the trier of the facts finds from the evidence: (1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure." (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 743 [306 P.2d 432]; *Hildebrand* v. *Los Angeles Junction Ry. Co.,* 53 Cal.2d 826, 830 [350 P.2d 65].)

We conclude that there is no substantial evidence in the record before us from which the trier of fact reasonably could have found that the defendant had the last clear chance by the exercise of ordinary care to do anything other than what he did do to avoid the accident.

Somewhere in excess of 75 feet west of the point of impact the defendant applied his brakes and attempted to avoid a collision with the plaintiff's automobile. According to his testimony this occurred when he first saw the plaintiff, and when he was 150 to 160 feet west of the intersection. The skid marks and the inescapable factor of reaction time confirm the defendant's approximation respecting the position of his automobile at the time when the incident initiating the application of brakes occurred. The plaintiff contends, however, that there is other evidence which supports a conclusion that the defendant saw her peril before the time he attempted to apply his brakes, and at a time when he could have avoided the accident by the exercise of ordinary care. This contention is based on the testimony of the plaintiff that when she was a car length into the south half of the intersection and first saw the defendant's automobile it was approximately 408 feet away; on the testimony of the defendant's passenger that after he saw the plaintiff he looked to see if the defendant was going to apply his brakes and saw the defendant's foot go down; and upon the fact that the range of vision over the area separating the defendant and the plaintiff was 800 feet to and from the intersection.

The defendant claims that the testimony of the plaintiff

with respect to distance is not substantial; is inherently improbable; and should be disregarded. ■ Although conflicting as well as nonconflicting evidence may be relied upon in support of a request for an instruction on a relevant legal theory, such evidence must be of that substantial character required by law to support a verdict. ■ In *Estate of Teed,* 112 Cal.App.2d 638, 644 [247 P.2d 54], the court said:

". . . if the word 'substantial' means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case."

■ The arguments pro and con respecting the substantial nature of the evidence relied upon by the plaintiff consider the application of mathematical computations involving assumed factors unsupported by the evidence. The conclusions reached are speculative. The plaintiff's testimony is subject to the obvious conclusion that from the time she first saw the defendant's automobile, when she was a car length within the south half of the highway, until the time of the accident she had travelled a comparatively short distance, and as the rate of speed of her automobile, its length and its location at the time of the impact cannot be established with reasonable certainty from the evidence, her approximation that the defendant's automobile was 408 feet distant when she first saw it is inherently improbable and speculative, and does not meet the test of substantiality required of evidence to support a conclusion that the defendant saw her within time to avoid a collision by the exercise of ordinary care. (*Jobe* v. *Harold Livestock Com. Co.,* 113 Cal.App.2d 269, 273, 275 [247 P.2d 951].) In this regard it should be noted that the investigating officer's testimony with respect to the point of impact is not related to any specific point on the plaintiff's automobile, and is one of the conjectural premises involved in the computations set forth in the arguments heretofore noted.

Furthermore, it would appear that the plaintiff's contention places her in a dilemma. If she saw the defendant's automobile when it was 408 feet distant and her automobile was a car length within the eastbound lanes, she had a chance to avoid the accident by the exercise of ordinary care. Her peril was not one from which she could not escape either because of a physical impossibility or because of an unawareness of the

danger. Her automobile was moving, and she was required only to traverse the 11½-foot-wide lane in which the defendant's automobile was approaching in order to get to a place of safety. A slight increase in the speed of her car would have avoided the accident. Under the general rule heretofore stated the doctrine of last clear chance would not apply. (*Brandelius* v. *City & County of San Francisco, supra*, 47 Cal.2d 729, 743; *Warren* v. *Ubungen, supra*, 177 Cal.App.2d 605, 608.)

Furthermore, if, as argued by the plaintiff, the defendant saw her in a moving automobile when he was 408 feet away and she was actually crossing the eastbound lanes, there would be no basis for any belief on his part at that time that she was in a position of peril from which she could not escape, and for this additional reason the doctrine would not be applicable. (*Brandelius* v. *City & County of San Francisco, supra*, 47 Cal.2d 729, 743.)

■ The claim that the testimony of the defendant's passenger supports an application of the doctrine because it shows that he had time to look down before the defendant applied his brakes, is wholly without merit. It may not be inferred that the passage of time demonstrated by this incident was such as to afford the defendant the last clear chance to avoid the accident in question.

■ The further claim that the fact of an 800-foot visibility to and from the intersection created a conflict in the evidence on the issues in question which should have been left to the jury likewise is without merit. Although the argument in support of this claim is not clearly presented, it appears to be the contention of the plaintiff that the defendant could have seen her long before he said he did see her, and therefore had ample opportunity to avoid the collision. The fact that the intersection was visible to the defendant during the last 800 feet of his approach thereto, does not establish that the plaintiff was in the intersection while he was traversing this distance, or at what time during his approach he observed her, if at all, or what her position was when he did observe her. Such evidence is wholly unsubstantial upon which to base a finding that at some particular place along this 800-foot approach the defendant knew or in the exercise of ordinary care, should have known that the plaintiff was in a position of peril from which she could not escape. Unless this fact can be established by some substantial evidence, the last clear chance doctrine does not apply. Mere speculation will not suffice.

In *Young* v. *Carlson,* 128 Cal.App.2d 743, 747 [276 P.2d 23], the court said: ''But it must be remembered that the basic rule is that plaintiff's perilous position must be actually discovered by the defendant, that is, the direct or circumstantial evidence must show actual knowledge. It is true that actual knowledge must sometimes be inferred, as the cases last cited indicate, but such inference can only be indulged in where from the evidence such inference is clear and positive. The inference may not be based on conjecture or speculation.'' (*Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 294 [246 P.2d 663]; *Kowalski* v. *Shell Chemical Corp.,* 177 Cal.App.2d 528, 532-537 [2 Cal.Rptr. 319]; *cf. Jobe* v. *Harold Livestock Com. Co.,* 113 Cal.App.2d 269, 273 [247 P.2d 951]; *Kavner* v. *Holzmark,* 185 Cal.App.2d 138, 143 [8 Cal.Rptr. 145].) The evidence in this case is not sufficient to establish that the defendant had any knowledge of the plaintiff's presence or peril before he reached a position 150 to 160 feet from the intersection, or, possessing such knowledge, that he knew or in the exercise of ordinary care should have known that she was unable to escape from such peril. The lack of substantial evidence to support any one element of the doctrine requires a refusal to instruct thereon. (*Warren* v. *Ubungen, supra,* 177 Cal.App.2d 605, 608.)

The plaintiff contends that nevertheless the instruction should have been given because at a distance of 150 to 160 feet from the intersection the defendant had the last clear chance to avoid the accident by taking other precautions besides applying his brakes, viz., he could have sounded the horn on his automobile and swerved to the left. This contention requires a determination of the question whether the defendant had a clear chance to avoid the accident by taking the additional precautions which the plaintiff claims were required of him in the exercise of ordinary care. When the defendant first saw the plaintiff at a distance of 150 to 160 feet from the intersection he was traveling at a speed between 40 and 50 miles per hour; by computation the accident happened between two and three seconds later; and the chance afforded him to avoid a collision had to be exercised within that time. In the interim the ordinary reaction time expired; the defendant was occupied with applying his brakes; and apparently there was some swerving to the right, as his automobile veered in that direction. The action of the defendant must be judged in the light of the judicially recognized fact that a person of ordinary prudence acting under the stress of

an imminent peril generally does not exercise the same amount of care that he would exercise in calmer and more deliberate moments. (*Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, 296; *Miner* v. *Debney-Johnson Oil Corp.,* 219 Cal. 580 [28 P.2d 23] ; *McPhee* v. *Lavin,* 183 Cal. 264 [191 P. 23].)

 In considering the efficacy of the additional precautions which the plaintiff contends should have been taken to avoid the accident, uncertainties with respect to the plaintiff's position at the time the defendant first saw her and the position of her automobile at the time of the accident should be noted. The settled statement furnishes evidence which would place the plaintiff 10 feet south of the stop limit line when first observed by the defendant; what part of her automobile was 10 feet from the indicated point is not made known; neither is the distance from that point to the position of her automobile when the accident occurred or to any intervening point. As heretofore indicated, although the investigating officer places the point of impact at 19 feet north of the south curb of Mission Boulevard, the position of plaintiff's automobile with respect thereto cannot be determined with that degree of certainty which would give any substance to a computation respecting her speed. The plaintiff's speed was related to the effect which the sound from an approaching automobile could have had upon her ability to avoid the accident, as well as to a determination whether the defendant acted with ordinary care in swerving to the right instead of to the left. The plaintiff testified that she saw the defendant when she entered the eastbound lanes. The fact that she misjudged the distance he was away from her does not overcome her admission that she saw him at that time. Therefore she already had the information which the sounding of a horn would have given her and, under the circumstances, its effect upon avoiding the accident, if any, would be conjectural. In like manner, any determination as to whether the defendant, in the exercise of ordinary care, should have attempted to turn to the left instead of to the right in order to avoid a collision would be based on speculation and conjecture. The picture presented by the evidence in this case supports the conclusion of the trial court that, as a matter of law, the defendant did not have a clear chance to avoid the accident by the exercise of ordinary care.

There are decisions in which evidence of a neglect to sound a horn or swerve within the time available has been held sufficient, under the circumstances, to support a finding of failure

to exercise ordinary care as a last clear chance to avoid an accident. (*Center* v. *Yellow Cab Co.*, 216 Cal. 205, 208 [13 P.2d 918]; *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915]; *Guyton* v. *City of Los Angeles*, 174 Cal.App.2d 354, 361 [344 P.2d 354]; *Jones* v. *Gilland*, 137 Cal.App.2d 486, 490 [290 P.2d 329]; *Lebkicher* v. *Crosby*, 123 Cal.App.2d 631, 638 [267 P.2d 361]; *Bragg* v. *Smith*, 87 Cal.App.2d 11, 15 [195 P.2d 546]; *Gardini* v. *Arakelian*, 18 Cal.App.2d 424, 430 [64 P.2d 181]; *Bailey* v. *Wilson*, 16 Cal.App.2d 645, 649 [61 P.2d 68].) Some of these cases involved instances of pedestrians standing still who could have heeded a warning by stepping out of the way; others involved automobiles going in the same direction; in most of them a slight movement would have avoided an accident; in none of them were the factors of speed and distance similar to those which are presented in the case at bar; none of them involved an accident at an intersection or a through highway; and in each of them there was ample time under the circumstances within which to act. In *Peterson* v. *Burkhalter*, 38 Cal.2d 107, 109 [237 P.2d 977], the doctrine was applied in an intersection accident case where the plaintiff not only failed to sound a warning or swerve but also failed to apply his brakes and the time and distance factors were longer than in the instant case. In other cases evidence of a failure to sound a horn or swerve has been held not sufficient to justify an application of the doctrine. (*Doran* v. *City & County of San Francisco*, 44 Cal.2d 477 [283 P.2d 1]; *Rodabaugh* v. *Tekus, supra*, 39 Cal.2d 290, 296; *Fambrini* v. *Stikkers*, 183 Cal.App.2d 235 [6 Cal.Rptr. 833]; *Bell* v. *Huson*, 180 Cal.App.2d 820 [4 Cal.Rptr. 716]; *Hickambottom* v. *Cooper Transp. Co.*, 163 Cal.App.2d 489 [329 P.2d 609].) In some of these cases the available time was two to three seconds; some of them involved intersection accidents; in many of them the defendant had applied his brakes; and, on the whole, they present factual situations more analogous to the instant case than those in which evidence of a failure to sound a horn or swerve was held sufficient to support a finding against the defendant under the doctrine of last clear chance.

 "In analyzing the required conditions for the application of the doctrine . . ., it should be noted that the time element is the all important factor. In other words, if the doctrine is to be applied and a recovery is to be permitted despite the contributory negligence of the injured party, there must be substantial evidence to show that the defendant had

a last clear chance to avoid the accident by the use of ordinary care following the time that the injured party had lost any similar opportunity to avoid the accident by the use of such care.'' (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 738 [306 P.2d 432].)

In many decisions it has been emphasized that the application of the doctrine is confined to those instances where the chance afforded the defendant to avoid the accident by the exercise of ordinary care is a *clear* chance. (*Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, 295; *Fambrini* v. *Stikkers, supra,* 183 Cal.App.2d 235, 243; *Bell* v. *Huson, supra,* 180 Cal. App.2d 820, 826; *Kowalski* v. *Shell Chemical Corp., supra,* 177 Cal.App.2d 528, 534; *Hickambottom* v. *Cooper Transp. Co., supra,* 163 Cal.App.2d 489, 494; *Hall* v. *Atchison, T. & S. F. Ry. Co.,* 152 Cal.App.2d 80, 84 [312 P.2d 739]; *Mehling* v. *Zigman,* 116 Cal.App.2d 729, 733 [254 P.2d 141]; *Berton* v. *Cochran,* 81 Cal.App.2d 776, 779 [185 P.2d 349]; *Dalley* v. *Williams,* 73 Cal.App.2d 427, 432 [166 P.2d 595]; *Poncino* v. *Reid-Murdock & Co.,* 136 Cal.App. 223, 230 [28 P.2d 932]; *Bagwill* v. *Pacific Electric Ry. Co.,* 90 Cal.App. 114, 121 [265 P. 517].) ''The doctrine presupposes time for effective action . . .'' (*Dalley* v. *Williams, supra,* 73 Cal.App. 2d 427, 432); and does not contemplate ''split second'' decisions. (*Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, 297; *Fambrini* v. *Stikkers, supra,* 183 Cal.App.2d 235, 244; *Hickambottom* v. *Cooper Transp. Co., supra,* 163 Cal.App.2d 489, 492; *Hall* v. *Atchison, T. & S. F. Ry. Co., supra,* 152 Cal. App.2d 80, 85; *Johnson* v. *Sacramento Northern Ry.,* 54 Cal. App.2d 528, 542 [129 P.2d 503]; *Bagwill* v. *Pacific Electric Ry. Co., supra,* 90 Cal.App. 114, 121.)

The evidence in this case presents the usual type of intersection collision between two rapidly moving automobiles.

''It has been frequently stated that the last clear chance doctrine is ordinarily inapplicable under such conditions.'' (*Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, 294; *Kowalski* v. *Shell Chemical Corp.,* 177 Cal.App.2d 528, 531 [2 Cal.Rptr. 319]; *Poncino* v. *Reid-Murdock & Co.,* 136 Cal.App. 223, 232 [28 P.2d 932].)

We conclude that this case comes within the category so described; that there is no substantial evidence to support a finding that the defendant had a last clear chance to avoid the collision in question, either through the application of

brakes, sounding his horn or swerving; and that the refusal to give the requested instruction was proper.

Judgment affirmed.

Griffin, P. J., and Shepard, J., concurred.